**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAMELA GOODMAN, an unmarried
individual,
            *Plaintiff-Appellant,*

                v.

STAPLES THE OFFICE SUPERSTORE,
LLC, a Delaware limited liability
company; DOES, I-X,
            *Defendants-Appellees.*

No. 10-15021

D.C. No.
2:08-cv-00445-JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
December 6, 2010—San Francisco, California

Filed May 3, 2011

Before: Robert E. Cowen,* A. Wallace Tashima, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Silverman;
Concurrence by Judge Tashima

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

5709

## COUNSEL

Jeffrey S. Kaufman (argued), Jeffrey S. Kaufman, Ltd., Scottsdale, Arizona, for the appellant.

Jeffry A. Miller (argued), Matthew B. Stucky, and Carl F. Mariano of Lewis Brisbois Bisgaard & Smith LLP, San Diego, California and Phoenix, Arizona, for the appellee.

## OPINION

SILVERMAN, Circuit Judge:

Federal Rule of Civil Procedure 26(a)(2) requires a party to timely disclose a written report of a witness "if the witness is one retained or specially employed to provide expert testimony in the case . . . ." Generally speaking, treating physicians are excused from this requirement. They are a species of percipient witness. They are not specially hired to provide expert testimony; rather, they are hired to treat the patient and may testify to and opine on what they saw and did without the necessity of the proponent of the testimony furnishing a written expert report.

In this case, the plaintiff's treating doctors not only rendered treatment, but after the treatment was concluded, these very same doctors were provided with additional information by plaintiff's counsel and were asked to opine on matters outside the scope of the treatment they rendered. The district court ruled that these physicians would be allowed to testify to the opinions they formed in the course of caring for the patient, but because no Rule 26 expert witness report had been provided, the court precluded the treating doctors from testifying to opinions they formed afterward, opinions solicited from them solely for the purposes of the litigation.

We hold today that when a treating physician morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony, the proponent of the testimony must comply with Rule 26(a)(2). However, because the law regarding these hybrid experts was not set-

tled, and because treating physicians are usually exempt from Rule 26(a)(2)'s requirements, we exercise our discretion to apply this clarification prospectively.

## I.  Background

On the afternoon of May 9, 2007, Goodman and her business associate Jean Adams went to Staples in Scottsdale to purchase office supplies. The store was being remodeled, but it was open to the public. As she went to leave the store, Goodman turned a corner at the end of an aisle. She tripped on an "end cap" and fell.[1]

Goodman remained lying on the floor until paramedics arrived at the store. She was never unconscious. The paramedics took her by ambulance to Scottsdale Healthcare Emergency Department, where she complained of head, neck, and foot pain and of tingling in her arm. Goodman told the ER doctor that she thought she hit her head on the floor when she fell. According to Scottsdale Healthcare records, a CT scan of Goodman's head and cervical spine showed no fractures or subluxations and showed that the fusion plates in her neck from a cervical spinal fusion surgery six weeks earlier remained intact. She was diagnosed with acute closed-head injury, neck pain, and left foot contusion, given a prescription for pain medication, and discharged with instructions to follow up with her physician back home in California.

Four days after the fall, Goodman went to the emergency room at Century City Doctors Hospital in Los Angeles, complaining of severe neck pain. An x-ray taken while Goodman was in the emergency room showed no fracture, subluxation, or swelling to her cervical spine. She stayed in the hospital for six days until the pain subsided.

---

[1]An "end cap" is a merchandise display area located at the end of a row of merchandise display shelves, with a display area or shelves perpendicular to the shelves along the row.

A couple months later, on July 26, 2007, Goodman returned to the doctor in Los Angeles who had performed her spinal fusion surgery. She told the doctor she had experienced severe neck pain since her fall at Staples. An MRI and CT scan were obtained, which revealed a fracture line adjacent to the fusion plate. Goodman was admitted to the hospital and underwent fusion revision surgery on July 31, 2007. The surgeon's operative report states that magnification during surgery confirmed the fracture.

Over the next few months, despite treatment by a pain management specialist, Goodman's neck pain persisted. She was re-admitted to the hospital on January 17, 2008, and underwent another fusion revision surgery on January 22.

On February 7, 2008, Goodman filed a complaint against Staples in Maricopa County Superior Court. Goodman alleged that Staples negligently allowed an unreasonably dangerous condition to exist in their store, resulting in her fall over the end cap. Staples removed the case to federal court based on complete diversity between the parties.

The district court issued a scheduling order that established deadlines for the exchanges of initial disclosures and expert disclosures and set a discovery cut-off date. On May 21, 2008, Goodman provided Staples with her initial disclosures, identifying a number of her healthcare providers as potential witnesses. On November 7, 2008, the deadline for plaintiff expert disclosures, Goodman disclosed the identities and curricula vitae of two experts: Dr. Gary Bakken, a "human factors" expert, and Alex Balian, a store safety expert. She also provided a list of those of her healthcare providers whom she intended to call as expert witnesses. The list of providers included the name of the doctor or institution, the dates of service, and the bill amount. Goodman's disclosures did not include written reports by any experts.

A week later, after the deadline for her expert disclosures had already passed, Goodman disclosed two additional non-

medical experts: Dr. Glenn Wilt, an economist, and Gretchen Bakkenson, a vocational consultant. This disclosure included the experts' contact information and one-paragraph summaries of the topics on which Goodman expected them to testify. The disclosures did not include the experts' written reports.

On February 13, 2009, the deadline for defense expert disclosures, Staples disclosed the identity and written reports of three experts: Dr. William Horsley, a radiologist; Dr. Zoran Maric, a spine surgeon; and Michael Kuzel, a human factors expert.

On March 30, 2009, the deadline for plaintiff rebuttal expert disclosures, Goodman disclosed written reports for previously identified non-medical experts Bakken, Balian, and Wilt. She also identified a number of rebuttal experts: Dr. Todd Lanman, Goodman's spinal surgeon; Dr. Mohammed Shamie, a psychiatrist; Dr. Natan Shaoulian, a neurologist; Dr. Daniel Wallace, Goodman's rheumatologist; and Dr. Behboush Zarrini, a pain management specialist.

Staples moved to preclude all of Goodman's experts as improperly disclosed. The district court granted Staples' motion in part, striking Bakken and Balian as witnesses and restricting Wilt's testimony to rebuttal. The court deferred ruling on the motion with respect to Goodman's medical experts.

Goodman subsequently filed a "Motion for Clarification of Prior Court Orders re Plaintiff's Witnesses." She asked the court to allow her healthcare providers, who she had disclosed as rebuttal experts, to testify in her case-in-chief and to allow Bakken and Balian to testify on rebuttal. After additional oral argument, the court clarified its earlier order, stating that Bakken, Balien, and Wilt were precluded from testifying in Goodman's case-in-chief but were *not* precluded from testifying on rebuttal. With respect to Goodman's healthcare providers, the court limited their case-in-chief testimony to opinions actually developed during the course of their treatment of Goodman,

as evidenced by their office notes, hospital records, and consultation reports, giving the following rationale in its December 10, 2009 order:

> [U]nder Federal Rules of Civil Procedure 26(a)(2)(B), the disclosure of an expert witness must be accompanied by a written report discussing the opinion of the expert, including the basis for the opinion. . . . In this case, Goodman failed to include any written reports of her retained experts in accordance with the deadlines imposed by this Court. . . .
>
> Rule 26(a)(2)(B) exempts from the requirement of a written report only those [experts] *not* "specifically retained to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." . . . A treating physician is an expert and to the extent he or she treated the plaintiff, diagnosed the conditions and reached a prognosis, that testimony is not testimony for which the expert has been specially retained. But once the lawyer for the claimant undertakes to elicit an opinion whether a particular traumatic event caused the condition as opposed to another cause, the expert has been transformed into the same type of expert envisioned by the report requirement. . . .

The court did not preclude or limit any testimony the doctors might be called upon to give in rebuttal.

After the district court clarified its order regarding the limits on Goodman's experts' testimony, Staples moved for summary judgment. On the same day that Staples moved for summary judgment, Goodman filed a number of motions in limine and moved for reconsideration of the court's order limiting her healthcare providers' case-in-chief testimony. In granting Staples' motion for summary judgment, the district court ruled that Goodman had not established a breach of duty

by Staples, holding that the condition of the end cap was open and obvious as a matter of law. It also ruled that, even assuming a breach of duty, Goodman had not come forward with evidence proving that her injuries were caused by her fall because, as previously noted, her treating physicians had been precluded from opining on causation due to Goodman's failure to comply with disclosure requirements.

Goodman now appeals the district court's order.

## II.  Discussion

### A.  Standard of Review

We review the district court's grant of summary judgment de novo. *Bagadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *Id.* (citing *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995)).

We review the district court's rulings concerning discovery, including the imposition of discovery sanctions, for abuse of discretion. *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988). But to the extent the imposition of sanctions turns on the resolution of an issue of law, review is de novo. *See Palmer v. Pioneer Inn Assocs., Ltd.*, 338 F.3d 981, 985 (9th Cir. 2003).

### B.  Grant of Summary Judgment in Favor of Staples

**[1]** To establish a claim of negligence under Arizona law, a plaintiff must prove that (1) defendant owed plaintiff some duty, (2) defendant breached that duty, (3) defendant's breach caused plaintiff's injuries, and (4) plaintiff sustained actual damages. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The district court granted summary judgment for Staples on

the grounds that Goodman failed to establish (1) that Staples breached its duty to Goodman and (2) that Goodman's injuries were caused by her fall, both essential elements of her claim. Because we hold that Goodman raised triable issues of fact as to both of these elements, we reverse the district court's grant of summary judgment.

## 1. Breach of Duty

"Whether the defendant has met the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case." *Id.* A plaintiff can establish a breach of duty by a business owner by proving that the owner or his employees created a dangerous condition on the business premises. *Walker v. Montgomery Ward & Co.*, 511 P.2d 699, 702 (Ariz. Ct. App. 1973). Generally, a business owner is not liable to an invitee for injuries from dangerous conditions that are open and obvious. *Tribe v. Shell Oil Co.*, 652 P.2d 1040, 1042 (Ariz. 1982) (citing *Daugherty v. Montgomery Ward*, 428 P.2d 419 (Ariz. 1967)). But a finding that a condition is open and obvious does not automatically preclude liability. "[I]f the proprietor should anticipate the harm from the condition despite its obviousness, he may be liable for physical injury caused by that condition." *Id.* If the business owner has reason to expect harm to the invitee because, for example, the invitee is likely to be distracted, then duty may require him to warn the invitee or take other steps to protect him. *Id.* (citing Restatement (Second) of Torts § 343A, comment f (1965)).

Here, the district court concluded that Goodman failed to establish the existence of a dangerous condition, and that she therefore could not prove any breach of duty by Staples. The court reviewed photos of the end cap and found that it was "of enough size and area to remain visible." The court also noted that the person walking immediately in front of Goodman— her business associate, Adams—successfully navigated the end cap. According to the district court, the end cap was not

unreasonably dangerous as a matter of law because it was
open and obvious.

[2] Goodman argues that the district court erred in con-
cluding that the end cap was not unreasonably dangerous as
a matter of law. We agree. In Arizona, whether a hazard is
open and obvious is almost always a jury question; breach of
duty is a factual issue usually decided by the jury. *Gipson*,
150 P.3d at 230. A court may decide that the defendant did
not breach his duty as a matter of law only when reasonable
people could not conclude otherwise. *Flowers v. K-Mart
Corp.*, 616 P.2d 955, 957 (Ariz. Ct. App. 1980) (citing *Moore
v. Maricopa Cnty.*, 466 P.2d 56 (Ariz. Ct. App. 1970)).

[3] We have reviewed the photos of the end cap on which
the district court relied. It appears that the end cap was a few
inches off the ground. At the time of Goodman's fall, there
was no merchandise or shelving above the base deck.
Although the end cap was bordered on two sides by contrast-
ing dark-colored carpet, a third side was bordered by linoleum
in a beige color similar to the base deck. Of course, when the
end cap is depicted as the sole subject of a photograph, it
appears obvious. But the picture does not necessarily rebut
Goodman's testimony that the empty bottom shelf close to the
floor, surrounded by other fully-stocked shelves higher up,
created a sort of optical illusion. Nor was the photo taken
from Goodman's vantage point as she encountered the end
cap. This poses a quintessential jury question.

Moreover, even if the end cap were open and obvious, its
open and obvious nature does not automatically preclude lia-
bility. *See Tribe*, 652 P.2d at 1042. In *Tribe*, the Arizona
Supreme Court reversed a grant of summary judgment in
favor of the defendant in a negligence case involving a slip
and fall at a gas station. The plaintiff and her daughter stepped
up approximately six inches onto the sidewalk where the sta-
tion's water fountain was located. *Id.* After getting a drink,
while cautioning her daughter about passing traffic, the plain-

tiff stepped off a *sixteen* inch step in front of the sidewalk and fell, shattering her wrist. *Id.* Despite the fact that the higher step was painted a contrasting color, the court held that it was up to a *jury* to decide whether the step was open and obvious and whether the station owner should have anticipated that the step might cause injuries. *Id.* Writing for a unanimous Arizona Supreme Court, Justice Bales recently confirmed that foreseeability of harm may be a factor in determining whether a defendant breached his duty of care. *Gipson*, 150 P.3d at 231 (holding that foreseeability is a factor in determining the nature and extent of conduct necessary to fulfill the duty, and as such is a factual inquiry reserved for the jury).

Here, a jury could conclude that Staples knew or should have known that the empty end cap could cause harm. Stores encourage shoppers to look at merchandise, not at the floor. A Staples employee testified that his manager trained him not to leave end caps completely empty—no shelves or merchandise— because of safety concerns. Another employee testified that Staples trained him to make sure items in aisles were at least navel-high so they could be obviously seen. There is evidence from which a reasonable person could conclude that Staples should have anticipated that a customer might not notice the end cap under the circumstances and might fall and injure herself.

**[4]** Genuine issues of material fact exist as to whether the end cap was an open and obvious condition and, even assuming obviousness, whether Staples should have anticipated the danger nevertheless. We hold that the district court erred in concluding as a matter of law that no unreasonably dangerous condition existed at the time of Goodman's fall.

## 2. Causation

Under Arizona law, causation is an essential element of a negligence claim. *Id.* It is not sufficient for a plaintiff to prove that her injuries *might* have been caused by the defendant's

breach of duty; instead, the plaintiff must prove that the breach *probably* caused her injuries. *See Kreisman v. Thomas*, 469 P.2d 107, 110 (Ariz. Ct. App. 1970) (affirming trial court's directed verdict for the defendant after close of plaintiff's case because plaintiff failed to establish breach of duty and causation). Causation is normally an issue for the jury. *Gipson*, 150 P.3d at 230.

Here, Goodman alleges that her fall at Staples resulted in a fracture to the fusion mass in her cervical spine, causing severe pain and necessitating fusion revision surgery. She also alleges that her injuries from the fall led to psychiatric problems, including depression, anxiety, and stress. To succeed in her negligence claim against Staples, she would have to prove that these injuries probably resulted from her fall. However, the district court prohibited her medical experts from testifying about causation in her case-in-chief due to her failure to comply with expert disclosure rules.

**[5]** Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose the identity of any expert witness. If the expert is "one retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony," the disclosure must be accompanied by a written report containing (1) a complete statement of the expert's opinions and their bases, (2) the information relied upon by the expert in forming the opinions, (3) all exhibits to be used to summarize or support the opinions, (4) the expert's qualifications and list of publications, (5) a list of cases in which the expert testified, and (6) a statement of the expert's compensation. Fed. R. Civ. P. 26(a)(2)(B). Generally, a treating physician is not "retained or specially employed to provide expert testimony"—a treating physician is a percipient witness of the treatment he rendered—and therefore he is not subject to the written report requirement. Fed. R. Civ. P. 26(a)(2) advisory committee's note (1993).

**[6]** The issue of when, if ever, a treating physician is transformed into an expert offering testimony on matters beyond the treatment rendered, for purposes of Rule 26 disclosures, is an issue of first impression for us. Goodman argues that Rule 26 does not require a written report before a treating physician testifies to virtually anything. In response, Staples acknowledges that written reports may not always be required of treating physicians, but argues that this exception to the written report requirement applies only when the treating physician formed his opinion *during the course of treatment*.

Goodman relies primarily on a decision from the Sixth Circuit in support of her argument that treating physicians do not need to provide written reports. *In Fielden v. CSX Transportation, Inc.*, 482 F.3d 866 (6th Cir. 2007), the Sixth Circuit held that "a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Id.* at 871. Staples also relies on *Fielden*, but as supporting its argument that Rule 26 requires a treating physician to disclose a written report unless evidence shows that the physician formed his opinion during the course of treatment.

We agree with Staples that *Fielden* does not stand for the proposition that a treating physician *never* has to disclose an expert report. *Id.* at 870 (noting the concern that permitting treating physicians to testify in all circumstances without providing expert reports would circumvent the policies underlying Rule 26(a)(2)(B)). Instead, the *Fielden* court concluded that evidence in the record showed that the physician in question had formed his opinion as to causation during the course of treatment. *Id.* at 871. Although the court did not elaborate on the type of evidence on which it relied in concluding that the physician formed his opinion during the course of treatment, it did distinguish *Fielden* from an unpublished Sixth Circuit case where there was "no evidence that the treating

physician reached the same conclusions regarding causation at the time he treated the patient." *Id.* (citing *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 811 (6th Cir. 2005)) (internal quotation marks and brackets omitted).

**[7]** In addition to the Sixth Circuit, other courts hold that Rule 26 requires parties to disclose a treating physician's written report in the absence of some evidence that the physician formed his opinion during the course of treatment. The Seventh Circuit recently held that a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, is required to submit an expert report under Rule 26(a)(2). *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734-35 (7th Cir. 2010) (affirming grant of summary judgment where no evidence in the record suggested that plaintiff's doctors considered or determined the cause of his injuries during the course of treatment). The Eighth Circuit goes further, requiring disclosure of a written report any time a party seeks to have a treating physician testify as to the *causation* of a medical condition, as opposed to merely the existence of the condition. *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 900 (8th Cir. 2010) (affirming grant of summary judgment because, without expert testimony as to causation, plaintiff could not prove an essential element under the Federal Employers Liability Act). District courts within this circuit have limited treating physician testimony to opinions formed during the course of treatment when the party seeking admission of the testimony disclosed no expert report. *See, e.g.*, *Durham v. Cnty. of Maui*, No. 08-00342, 2010 WL 2640117, at *8 (D. Haw. June 30, 2010); *Armatis v. Owens-Brockway Glass Container, Inc.*, No. S-08-2538, 2010 WL 148692, at *1 (E.D. Cal. Jan. 14, 2010); *J.W. v. City of Oxnard*, No. CV 07-06191, 2008 WL 4810298, at *7 (C.D. Cal. Oct. 27, 2008); *Vines v. United States*, No. 2:05-cv-02370, 2008 WL 4470795, at *3 (E.D. Cal. Oct. 2, 2008); *Headley v. Ferro Corp.*, 630 F. Supp. 2d 1261, 1266-67 (W.D. Wash. 2008).

**[8]** Today we join those circuits that have addressed the issue and hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment. Goodman specifically retained a number of her treating physicians to render expert testimony beyond the scope of the treatment rendered; indeed, to form their opinions, these doctors reviewed information provided by Goodman's attorney that they hadn't reviewed during the course of treatment.[2] For these reasons, we agree with the district court that those doctors fell outside the scope of the "treating physician" exception insofar as their additional opinions are concerned. Therefore, Rule 26(a)(2)(B) required disclosure of written reports. By failing to provide these reports until long after the deadline for plaintiff's expert disclosures had passed, Goodman failed to comply with Rule 26's disclosure requirements.

**[9]** When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *see also Torres v. City of L.A.*, 548 F.3d 1197, 1212-13 (9th Cir. 2008) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Although we agree with the district court that Goodman failed to comply with Rule 26(a) when she did not timely disclose expert reports for her medical experts, we must also acknowledge

---

[2]Goodman's attorney wrote to a number of Goodman's physicians enclosing a "Subjective Summary of Pamela Goodman's Condition Regarding Injury of May 9, 2007," a large number of unidentified medical records, the reports of Staples' medical experts, MRI and CT scan images, and, "perhaps other materials." Goodman's attorney asked the physicians to opine on the injuries caused by Goodman's fall "NOT ONLY based on your own observations but also based upon your understanding of the *patient's medical records as well*." The physicians' rebuttal expert reports —i.e. their letters to the attorney answering his questions—do not distinguish between opinions based on observations made during the course of treatment and those based on a review of the records sent by the attorney.

that the law regarding the scope of the "treating physician" exception in the hybrid expert situation was unsettled in this circuit before today. While we do not fault the district court for its ruling limiting Goodman's physicians' testimony, we think that fairness counsels in favor of applying our newly-clarified rule regarding hybrid experts prospectively. Under the circumstances, it would be unjust to allow Goodman's mistake about a previously unsettled point of law to be the *coup de grâce* to her case.

**[10]** Because we hold, as a matter of discretion, that Goodman should be allowed to rectify her error by disclosing reports for her treating physicians, we reverse the district court's summary judgment ruling on causation.

## C. Denial of Goodman's Motion for Reconsideration Regarding Testimony of Non-Medical Experts

Goodman also appeals the district court's decision to preclude her non-medical experts from testifying in her case-in-chief. Goodman disclosed the identities of Dr. Gary Bakken, a "human factors" expert, and Alex Balian, a store safety expert, on November 7, 2008, the deadline for plaintiff's expert disclosures. A week later, Goodman disclosed the identities of two additional experts: Dr. Glenn Wilt, an economist, and Gretchen Bakkenson, a vocational consultant. But she failed to provide these experts' reports until four-and-a-half months after the deadline: on March 30, 2009, after Staples' deadline for disclosing defense experts had expired, and on the deadline for disclosure of plaintiff's rebuttal experts, Goodman finally produced reports for her non-medical experts. Staples filed a motion asking the court to preclude improperly disclosed experts under Rule 37, which the district court granted as to Goodman's non-medical experts, allowing them to testify only on rebuttal.

As discussed above, Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each

expert and, for retained experts, requires that the disclosure includes the experts' written reports. Fed. R. Civ. P. 26(a)(2). Parties must make these expert disclosures at the times and in the sequence that the court orders. *Id.* Rule 37 "gives teeth" to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed. *Yeti by Molly Ltd.*, 259 F.3d at 1106 (citing Fed. R. Civ. P. 37(c)(1)). Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Id.* (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

**[11]** The district court did not abuse its discretion in deciding that Goodman's failure to comply with Rule 26 with respect to her non-medical experts was neither substantially justified nor harmless. Goodman has never argued that the failure was substantially justified; indeed, in her opposition to Staples' motion to preclude improperly disclosed experts, her attorney admitted that he simply failed to read the court's scheduling order and didn't realize that Goodman needed to disclose expert reports. Goodman's failure to comply with Rule 26 with respect to her non-medical experts was not substantially justified.

Nor has Goodman shown that the delay was harmless. The burden to prove harmlessness is on the party seeking to avoid Rule 37's exclusionary sanction. *Yeti by Molly Ltd.*, 259 F.3d at 1107. Goodman disclosed her expert reports more than a month after Staples' expert disclosure deadline had already passed. Because Goodman had not yet disclosed any expert reports, Staples made its decisions regarding defense experts under the belief that Goodman's non-medical experts would not be testifying in her case-in-chief. Staples' experts developed their opinions and wrote their reports without knowing the scope of Goodman's experts' opinions. Staples did not disclose an economist at all, because it thought Goodman

would not be presenting an economist in her case-in-chief. The district court found that this was "obvious prejudice," and we agree.

**[12]** Because Goodman's failure to disclose her non-medical experts' reports in a timely manner was neither substantially justified nor harmless, the district court did not abuse its discretion in precluding those experts from testifying in Goodman's case-in-chief. We affirm the denial of Goodman's motion for reconsideration with respect to this issue.

## D.   Motions In Limine

Goodman appeals the district court's denial as moot of (1) her motion in limine to prohibit Staples from contesting the reasonableness and necessity of her medical bills and (2) Staples' motion in limine to exclude medical bills disclosed after the close of discovery. The district court denied these motions as moot after granting summary judgment for Staples. These motions were not passed upon below and we decline to address them. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Because we reverse the district court's grant of summary judgment, we remand for the district court to rule on these motions in the first instance.

## III.   Conclusion

Accordingly, we REVERSE the district court's order granting summary judgment in favor of Staples, AFFIRM the denial of Goodman's motion for reconsideration of the district court's order limiting the testimony of Goodman's non-medical experts, and REMAND for further proceedings consistent with this opinion. Each side shall bear its own costs.

**AFFIRMED in part; REVERSED in part and REMANDED.**

TASHIMA, Circuit Judge, concurring:

Although I concur in all of the majority opinion, I write separately to explain why I do not disagree with the majority's conclusion that "fairness counsels in favor of applying our newly-clarified rule regarding hybrid experts prospectively." Maj. Op. at 5726. The question is whether this case presents the appropriate circumstances in which to exercise our discretion to allow "Goodman . . . to rectify her error by disclosing reports for her treating physicians." *Id*. at 5726.

The broader question is when an appellate court's ruling should be a "purely prospective" one that does not apply to the parties before it, contrary to the generally applicable rule. *See James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 536 (1991). We are told that we should declare rulings to be purely prospective only "infrequently." *Id.* Courts consider three factors in determining whether a decision should be applied nonretroactively: (1) whether the decision "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) whether applying the rule retroactively will further or retard its operation; and (3) whether retroactive application will create substantial inequitable results. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971) (internal citations omitted); *see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87-88 (1982); *Holt v. Shalala*, 35 F.3d 376, 380 (9th Cir. 1994); *Usher v. City of L.A.*, 828 F.2d 556, 559-60 (9th Cir. 1987).

These *Chevron Oil* factors are so open ended that they can be applied to justify prospective application in virtually any case where a "new" rule or interpretation of a rule is announced. In practice, it appears to be a matter wholly within the discretion of the panel to conclude that "[u]nder the circumstances, it would be unjust to allow Goodman's mistake about a previously unsettled point of law to be the *coup de*

*grace* to her case." Maj. Op. at 5726. Here, the *Chevron Oil* factors can be applied either to support retroactive application or to justify purely prospective application. Despite my misgivings at so open ended a rule, however, I conclude that this is a matter within the panel's broad discretion and the panel's decision to so exercise its discretion is not inconsistent with applicable case law.

Therefore, although this does not appear to me to be the unusual case in which the prospective application rule should be "infrequently" applied, I reluctantly concur in the panel's prospective only adoption of the hybrid expert disclosure rule. I concur without reservation in the remainder of the majority opinion.