OPINION
PER CURIAM:
Plaintiff Gorlick Distribution Centers and defendant Allied Exhaust Systems compete fiercely in the auto parts markets in Washington, Oregon and California. Gorlick believed that Allied was receiving favorable prices from a manufacturer, and thus turned from the marketplace to the courts. We must decide whether Allied (1) knowingly received discriminatory prices not justified by savings to the manufacturer, in violation of the Robinson-Patman Act, and (2) entered an agreement in restraint of trade with the manufacturer, in violation of the Sherman Act.
*1021 I. Background
Gorlick and Allied distribute aftermarket automotive parts. Both deal in products made by Car Sound Exhaust System, a muffler and catalytic converter manufacturer.
Gorlick challenges the preferential terms that Car Sound allegedly offered to Allied but not to Gorlick, including free shipping of its product to the Pacific Northwest; lower prices on merchandise; volume discount pricing even when the volume requirements weren’t met; and higher year-end sales rebates. Gorlick alleges that Allied knew these favorable shipping, pricing and rebate terms were not justified by cost differences, in violation of section 2(f) of the RobinsonPatman Act, 15 U.S.C. § 13(f).[1] Allied doesn’t dispute, for the most part, that it received advantageous terms. Instead, Allied argues that it didn’t know what prices other distributors received, and therefore couldn’t knowingly have received discriminatory prices. Allied also argues that the preferential terms had valid defenses under the Robinson-Patman Act.
Gorlick further alleges that Car Sound’s shipping policy was the product of an agreement or conspiracy between Allied and Car Sound in restraint of trade, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Because it incurred shipping, handling and storage costs not borne by Allied, Gorlick claims it had difficulty matching its competitor’s prices for Car Sound products.
After discovery, the district court granted summary judgment for Allied on all but one of the claims. It held that there was a genuine issue as to whether Allied’s receipt of free shipping from Car Sound and knowledge that Gorlick had to pay its own shipping costs violated the Robinson-Pat-man Act. Rather than proceed to trial, Gorlick voluntarily dismissed the remaining claim and timely appealed the district court’s grant of partial summary judgment for Allied.[2]
II. Discussion
We review de novo the district court’s grant of a motion for summary judgment. Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 822 (9th Cir.2011). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the law. Id.
A. Robinson-Patman Act Claims
The Robinson-Patman Act targets “the perceived harm to competition occasioned by powerful buyers” that have “the clout to obtain lower prices for goods than smaller buyers could demand.” Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164, 175, 126 S.Ct. 860, 163 L.Ed.2d 663 (2006). The act prohibits sellers from discriminating on price in the sale of like goods, and thereby reducing competition, unless the price differential can be justified by savings to the seller. See 15 U.S.C. § 13(a). The act contains a counterpart provision that makes it unlawful for buyers “knowingly to induce or receive a discrimination in price which is prohibited by this section.” Id. § 13(f).
*1022 Buyers are not liable if they are innocent beneficiaries of discriminatory prices. See Automatic Canteen Co. of Am. v. FTC, 346 U.S. 61, 70-71, 73 S.Ct. 1017, 97 L.Ed. 1454 (1953). Plaintiff thus bears the burden of showing that the buyer knew both that (1) he was receiving a lower price than a competitor and (2) the seller would have “little likelihood of a defense” for offering that price. Id. at 74, 79-80, 73 S.Ct. 1017. Restricting liability to situations where the buyer knowingly accepted illegal prices prevents section 2(f) from “putting the buyer at his peril whenever he engages in price bargaining.” Id. at 73, 73 S.Ct. 1017.
The district court assumed that the prices Allied paid were prohibited by the Robinson-Patman Act. Nevertheless, it held that Gorlick had not raised a genuine issue of fact as to whether Allied had the requisite knowledge under section 2(f). Gorlick appeals, arguing that the district court overlooked evidence that Allied had actual knowledge, trade knowledge and a duty to inquire whether it was receiving prohibited prices.
1. Actual Knowledge
Allied was undoubtedly aware of its favored position among Car Sound buyers. Its salesmen bragged that they were “buying better” than their competition, and internal memos trumpeted Allied’s superior purchasing discounts. Gorlick also suggests that Allied would have known it was receiving better prices because it could “reverse engineer” wholesale prices from retail prices.
But Allied is not liable under section 2(f) unless Gorlick shows Allied knew the prices it received likely did not qualify for a Robinson-Patman Act defense, see id. at 71, 73 S.Ct. 1017, a burden Gorlick fails to meet. Gorlick and Allied were very different Car Sound customers. Allied made Car Sound its flagship brand, purchased Car Sound products in much higher volumes and provided promotional services for Car Sound products that Gorlick did not. A Car Sound executive testified that Allied promoted only Car Sound products, while Gorlick pushed products sold by Car Sound’s competitors. Even if Allied knew it received superior prices and discounts, Gorlick presents no evidence that Allied knew these benefits resulted from anything other than the significant differences in how the two companies did business.
Gorlick argues that, at the summary judgment stage, we must infer that Allied knew it was receiving unfair prices because Car Sound offered it bulk discounts even when it failed to buy bulk quantities. According to Gorlick, where a seller publishes its prices, any departure from the schedule places the buyer on notice that he is receiving discriminatory prices. But the Robinson-Patman Act doesn’t prohibit buyers from haggling for a better deal. Id. at 73, 73 S.Ct. 1017. To put a buyer at risk of liability any time he asks for a lower-than-listed price would do enormous damage to the “sturdy bargaining between buyer and seller for which scope was presumably left” by our antitrust laws. Id. at 74, 73 S.Ct. 1017. The receipt of better-than-published prices, without more, does not satisfy section 2(f)’s knowledge requirement.
In any event, Gorlick itself received advantageous pricing even when it failed to meet Car Sound’s targets. In 2004 and 2006, Gorlick didn’t buy enough product to qualify for a rebate, but Car Sound gave it credit anyway. A Car Sound executive testified that his company offered all distributors “trailer pricing” even when they purchased less than a trailer’s worth of parts. A buyer’s receipt of discounted prices doesn’t run afoul of the act “if all purchasers were given an equal opportunity to purchase [at] the less expensive” *1023 price. FLM Collision Parts, Inc. v. Ford Motor Co., 543 F.2d 1019, 1025 (2d Cir.1976).
Gorlick offered other evidence of Allied’s alleged actual knowledge, none of which raises a triable issue of fact. It points to an e-mail in which Car Sound informed Allied that, because of its settlement with Gorlick, it would “unfortunately” have to offer the two companies the same prices. But Gorlick hasn’t explained why we should assume that Allied knew what prices its competitor was getting before the litigation began. Gorlick also introduced a meeting agenda showing that Allied was planning to ask Car Sound to raise Gorlick’s prices. But these premeeting notes don’t show that Allied ever followed through with the request, nor are they accompanied by evidence that Car Sound acceded or even took the request seriously.
2. Trade Experience Knowledge
Gorlick argues that, even if Allied did not actually know it was receiving discriminatory prices, its “trade experience” would have placed Allied on notice that those prices were prohibited by the RobinsonPatman Act. Gorlick has two routes to making a prima facie ease of trade knowledge. First, it may show that Allied secured “a substantial price differential” while knowing that Car Sound sold its products to Gorlick in the same quantities, in the same manner and “with the same amount of exertion.” See Automatic Canteen, 346 U.S. at 80, 73 S.Ct. 1017. Second, if there were differences in the quantities ordered or manner of sale, Gorlick must demonstrate that Allied knew those differences did not justify the price breaks it received. Id.
Because Allied and Gorlick were very different customers, only the second test is relevant here. Allied was Car Sound’s “number one account” and purchased roughly fifteen times the dollar amount of product that Gorlick did. Allied also developed an electronic ordering system that reduced errors and streamlined its dealings with Car Sound. Gorlick hasn’t presented evidence that Allied knew the deals it received were anything other than an incentive for its continued loyalty, much less that Allied had any insight into the pricing Car Sound offered competitors. Car Sound’s president testified that “we never show the price of one company to another.”
Gorlick cites to In re D & N Auto Parts Co., 55 F.T.C. 1279 (1959), but that case can be distinguished on its facts. There, the Federal Trade Commission concluded that auto parts jobbers who “were successful operators in a highly competitive market and knew the facts of life so far as the automotive parts market was concerned” should have known that their discounts were unjustified by the volume and manner of their purchases. Id. at 1295. But the jobbers there had joined together in membership corporations to secure discounts and rebates based, not on the volume of their individual purchases, but on the combined quantities purchased by the group. Id. Gorlick hasn’t explained why Allied, which was not part of such an organization, should have known that the favorable prices it received from Car Sound were unwarranted.
3. Duty to Inquire
Finally, Gorlick argues that Allied’s dealings with Car Sound put it on inquiry notice that it was receiving discriminatory prices not within a Robinson-Patman Act defense. Gorlick identifies only one case where we found that a buyer had a duty to inquire, Fred Meyer, Inc. v. FTC, 359 F.2d 351 (9th Cir.1966), rev’d on other grounds, 390 U.S. 341, 358, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968), but there the buyer induced *1024 the preferential prices and insisted that none of its competitors be offered the same deal. Id. at 365-66.
Gorlick produced no evidence showing that Allied did anything of the sort. The closest it comes is the meeting agenda showing that Allied planned to ask Car Sound to raise Gorlick’s prices but, as discussed above, there is no evidence that Allied followed through or that Car Sound acquiesced. Holding that Allied had a duty to inquire into the prices offered to its competitors would drastically expand the scope of that duty, and we decline to do so here.
In sum, we affirm the grant of summary judgment because Gorlick fails to show that Allied had actual knowledge, trade knowledge or a duty to inquire whether the favorable prices it received might be prohibited by the Robinson-Patman Act.
B. Sherman Act Claim
Section 1 of the Sherman Act proscribes contracts, combinations or conspiracies that unreasonably restrain trade. 15 U.S.C. § 1; State Oil Co. v. Khan, 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). We test the legality of a restraint under the rule of reason, asking whether it “is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.” FTC v. Indiana Fed’n of Dentists, 476 U.S. 447, 458, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986). To sustain a section 1 claim under the rule of reason, a plaintiff must show (1) the parties to the agreement intend to harm or restrain competition, (2) the agreement actually injures competition and (3) “the restraint is unreasonable as determined by balancing the restraint and any justifications or procompetitive effects of the restraint.” Cal. Dental Ass’n v. FTC, 224 F.3d 942, 947 (9th Cir.2000).
Gorlick claims that Allied and Car Sound together devised a shipping policy that violated section 1. Car Sound would ship its products to Allied’s facilities in the Pacific Northwest without charge but refused to ship to Gorlick outside of California, even if Gorlick paid the shipping costs. Gorlick worked around the refusal by having Car Sound products delivered to its California warehouses and transporting the goods to the Northwest at its own expense.
The district court rejected Gorlick’s section 1 claim, concluding that the evidence, viewed in the light most favorable to Gorlick, failed to establish that Allied and Car Sound acted in concert to limit Gorlick’s access to Car Sound products in the Pacific Northwest. Even if the evidence established that Car Sound refused to ship to Gorlick outside of California, the district court wasn’t persuaded that Car Sound made this decision “at Allied’s behest.” In the alternative, it held the Sherman Act claim time-barred.
We affirm, but on different grounds. See Rano v. Sipa Press, Inc., 987 F.2d 580, 584 (9th Cir.1993). Even assuming that Allied and Car Sound had an agreement, the Sherman Act claim fails because Gorlick produced no evidence that the vertical restraint actually injured competition. See Cal. Dental Ass’n, 224 F.3d at 947.
1. Anticompetitive effects
Gorlick complains that the alleged Allied — Car Sound agreement handicapped its ability to sell Car Sound products at competitive prices. But the antitrust laws “were enacted for the protection of competition, not competitors.” Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (internal quotation marks omitted). Gorlick must demonstrate injury to *1025 competition in the market as a whole, not merely injury to itself as a competitor. See Brantley v. NBC Universal, Inc., 675 F.3d 1192, 1200 (9th Cir.2012); McDaniel v. Appraisal Inst., 117 F.3d 421, 423 (9th Cir.1997); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 887 (9th Cir.1982).
Gorlick tries to translate its individual harm into harm to competition by relying on the concentrated nature of the market. As it notes, Gorlick and Allied together account for seventy percent of the market in parts of Oregon and Washington. Because Gorlick is Allied’s main rival, Gorlick argues that anything that hobbles its own business gives Allied increased market power and hurts competition overall.
This theory of anticompetitive harm might be plausible if we were looking only at the market for Car Sound products. But, as Gorlick concedes, the relevant market is “the market for aftermarket automotive exhaust products provided through traditional warehouse distributors.” A number of other manufacturers, including CATCO, Eastern, Walker, Flowmaster, Jones Exhaust, Schultz and the International Muffler Company, serve this market and provide substitutable products.
It doesn’t matter whether Car Sound’s products are fully interchangeable with those of its competitors because perfect fungibility isn’t required. United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 394, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). If it were, “only physically identical products would be a part of the market.” Id. Instead, products must be reasonably interchangeable, such that there is cross-elasticity of demand. Brown Shoe Co. v. United States, 370 U.S. 294, 325, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).
Nothing in the record suggests that the price Allied charged for Car Sound products was insensitive to the prices charged for competing products. That companies make a significant investment in new product lines isn’t surprising, and it’s certainly not probative of whether products are sensitive to price competition. And even if Allied charges higher prices than Gorlick for Car Sound products, that says nothing about how competitive Car Sound’s products were vis-a-vis other brands. In short, Gorlick fails to show how the alleged Allied — Car Sound pact dampens competition among these interchangeable brands, several of which it sells. Absent an allegation that Car Sound was the only, or even the dominant, brand of automotive exhaust parts, the supposed arrangement between Car Sound and Allied doesn’t affect competition in the relevant market.
So long as other manufacturers compete with Car Sound, which they do, and Gorlick sells those other brands, which it does, vibrant interbrand competition will act as a check on any intrabrand advantage that Allied may receive on Car Sound products. If Allied tries to charge monopoly prices on Car Sound parts, consumers will simply switch to the other brands. Nothing in the alleged Allied — -Car Sound agreement affects Gorlick’s ability to sell competing products. In fact, Gorlick was the principal distributor for CATCO, Car Sound’s main competitor, and had exclusive arrangements with at least two other suppliers.
Perhaps recognizing that the record supports the existence of strong inter-brand competition, Gorlick focuses instead on intrabrand competition among Car Sound distributors. But it is interbrand competition that is “the primary concern of antitrust law.” Continental T. V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 52, 97 S.Ct. 2549, 53 L.Ed.2d 568 n.19 (1977). Gorlick claims that a reduction in inter-brand competition isn’t required where there’s a concentrated market, but the only case it cites for this proposition is an *1026 out-of-circuit district court decision from 1988.
The Supreme Court has recognized that vertical restraints on intrabrand competition can actually promote interbrand competition and are therefore consistent with a competitive market. See Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 889-92, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007). In that case, a leather belts manufacturer refused to sell its products to retailers that discounted below a certain price. Id. at 883, 127 S.Ct. 2705. The Court held that such vertical price restraints are not a per se violation of section 1, because, among other procompetitive effects, they help protect investments in customer service. Id. at 890-91, 907, 127 S.Ct. 2705. A manufacturer might wish retailers to advertise its products, conduct demonstrations or hire knowledgeable employees. Id. at 890-91, 127 S.Ct. 2705. In the absence of a price restraint, a discounting retailer that provides no such services might undercut a competitor that has spent resources generating demand for the manufacturer’s product. Id. This free-riding could ultimately hurt consumers:
If the consumer can ... buy the product from a retailer that discounts because it has not spent capital providing services or developing a quality reputation, the high-service retailer will lose sales to the discounter, forcing it to cut back its services to a level lower' than consumers would otherwise prefer.
Id. at 891,127 S.Ct. 2705.
Allied provided just these sorts of benefits to Car Sound. Before Allied began selling Car Sound’s products in the Pacific Northwest, Car Sound had no presence in the region. Allied built brand recognition for the company by hosting seminars for muffler shops and making sales calls— “missionary work,” as Allied called it— alongside Car Sound employees. Gorlick, on the other hand, aggressively drove down the price for Car Sound products. Had Car Sound extended it free shipping, Gorlick might have undercut Allied’s investment in the product line. Far from hampering competition, the alleged vertical restraint helped ensure that Allied would continue promoting Car Sound parts, so they could compete effectively against products offered by other manufacturers. See Continental T. V., 433 U.S. at 54-55, 97 S.Ct. 2549; 8 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ch. 16A-3, at 136-42 (3d ed.2010).
In sum, Gorlick hasn’t provided a plausible explanation for how the alleged agreement between a manufacturer and a distributor, concerning a product line without market dominance, causes harm to competition in the entire automotive exhaust product market. While Gorlick may be unhappy that Allied got a better deal, it can’t turn its individual grievance into a general claim of harm to competition. Furthermore, its allegation of market concentration isn’t proof of anticompetitive harm because Car Sound’s competitors, whose products Gorlick continues to sell, act as a check on Allied’s ability to increase prices across the board.
2. Issue Fairly Raised Below
Gorlick protests that the record on anti-competitive effects is undeveloped and that it would be prejudiced if we affirmed the district court on that ground. But the parties discussed the anticompetitive effect of the alleged Allied — Car Sound agreement in supplemental briefs before the district court. Gorlick had a chance to present its side of the argument, and even included expert economic testimony. Furthermore; the parties conducted supplemental briefing following oral argument before us. There’s no indication of what more Gorlick would prove if it had another opportunity.
*1027 Sending this issue back to the district court would be a waste of time and judicial resources. There are no disputed material facts. Even assuming that a vertical agreement existed and that it affected the price of Car Sound products, there’s no plausible showing of harm to competition in the market for automotive exhaust products as a whole. Gorlick loses as a matter of law.
Favorable prices that improve one distributor’s competitive position do not necessarily violate the antitrust laws. Here, Gorlick hasn’t shown that Allied knew the price advantages it received resulted from any factor other than its large volume of purchases and enthusiastic salesmanship of Car Sound products. Nor has Gorlick demonstrated that any alleged agreement between Allied and Car Sound stifled competition in the market for aftermarket auto parts as a whole. We must return this capitalist rumble to the forum where it belongs: the market.
AFFIRMED.
Partial Concurrence and Partial Dissent by Judge PAEZ.

. Gorlick's original complaint also named Car Sound as a defendant, but Gorlick eventually dismissed Car Sound from the case.

. We ordered the parties to brief whether Gorlick’s dismissal without prejudice violated our final judgment rule. Because we detect no intent to manipulate our appellate jurisdiction, we're satisfied that Gorlick appeals from a final judgment. See James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1070 (9th Cir.2002).