PAEZ, Circuit Judge,
concurring in part and dissenting in part:
I join Parts I and II.A of the majority opinion and would affirm the dismissal of Gorlick’s Robinson-Patman Act claims. But I cannot agree with the majority’s decision to reach the merits of Gorlick’s Sherman Act claim. I would remand that claim to the district court for further proceedings, including further development of the record on the alleged anticompetitive effect of Allied’s agreement with Car Sound. The district court would then be in the best position, assuming there are no genuine factual disputes, to apply the rule of reason analysis.
“In the absence of genuine issues of material fact, we may affirm the district court’s summary judgment on any ground supported by the record, regardless of whether the district court relied upon, rejected, or even considered that ground, if the movant is entitled to judgment as a matter of law.” In re ATM Fee Antitrust Litig., 686 F.3d 741, 748 (9th Cir.2012) (internal citations and quotations omitted). Here, while the majority’s analysis may ultimately be correct, I do not think the thin record in this case supports such a determination.
The majority recognizes that Gorlick’s theory of anticompetitive harm — which was not the basis for Allied’s motion for summary judgment — “might be plausible,” except that the majority seems to assume that aftermarket automobile exhaust parts are fungible and thus that “vibrant inter-brand competition will act as a check on any intrabrand advantage that Allied may receive on Car Sound.” The record, however, does not support the conclusion that such products are “substitutable” or “interchangeable.” The record only provides oblique and out-of-context hints that aftermarket auto exhaust parts are so fungible. The only evidence supporting such an inference comes from a deposition of Allied manager Lawrence Contreras. While testifying that he could infer his competitors’ prices from Allied’s profit margins, the following exchange took place:
Q: When you say “they,” who is buying at the same rate as you?
A: Anyone that would have the same like product, not necessarily same brand.
Q: Same like product?
A: Like product, not brand name.
Q: So like — let’s take Walker versus MagnaFlow [Car Sound]. Is there a Walker product that is like a MagnaFlow product—
A: Yes.
Q: — in the context that you just used?
A: Yes.
*1028 Q: What would that be? Give me an example.
A: Mufflers, catalytic converters, tubing, parts and accessories. They’re all pretty close.
The other hints in the record are passing references in depositions discussing the origins of the aftermarket market (“Catalytic converters were just being developed as a replacement part on a car. Prior to that they were — had to be purchased from the car dealer.”), and the existence of several competitors manufacturing catalytic converters. In my view, this evidence does not conclusively establish that aftermarket catalytic converters are fully interchangeable products such that vibrant intrabrand competition can be assumed, particularly in light of other suggestions in the record that individual brands may be distinguishable. For example, a former Gorlick General Manager testified about the “investment” companies make in “shepherding [a new] line” of a particular product, suggesting that customers may systematically prefer one brand over another. Moreover, Gorlick did present some evidence that the market was sensitive to competition for distribution of Car Sound products. Gorlick’s expert opined that there was a likelihood of anticompetitive effects from the allegedly wrongful agreement between Allied and Car Sound. One of several factors the expert relied on was a muffler retailer’s statement bemoaning Car Sound’s decision to prevent Gorlick from selling Car Sound products in his area because the retailer “relie[d] on Gorlick’s to get a fair price” on Carsound products. The expert also opined that Allied was able to maintain monopoly prices while the alleged illegal agreement was in effect. If interbrand competition was as robust as the majority presumes, Allied would have been unlikely to sustain higher prices on Car Sound products — and muffler shops would be indifferent to Gorlick’s ability to sell Car Sound products.
Even assuming, arguendo, that the anti-competitive issue was fairly presented below, I do not see how Allied can prevail on summary judgment on this record, particularly when we must consider what little evidence there is in the light most favorable to Gorlick. Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 822 (9th Cir.2011). Although we invited supplemental briefing on the anticompetitive effects issue, I am not persuaded that we should exercise our discretion to reach the merits of Gorlick’s Sherman Act claim. Because of the way Allied’s summary judgment motion evolved in the district court, the issue was not thoroughly developed there, and I am reluctant to resolve this claim on the merits when it was never the basis for Allied’s summary judgment motion. Accordingly, I would remand the Sherman Act claim to the district court for further proceedings.