FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GORLICK DISTRIBUTION CENTERS, LLC, a Washington limited liability company, *Plaintiff-Appellant*, | No. 10-36083 |
| | D.C. No. 2:07-cv-01076-RAJ |
| v. | |
| CAR SOUND EXHAUST SYSTEM, INC., *Defendant*, | OPINION |
| and | |
| ALLIED EXHAUST SYSTEMS, INC., a California corporation, *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted October 12, 2011
Resubmitted June 19, 2012
Seattle, Washington

Filed July 19, 2013

Before:  Alex Kozinski, Chief Judge, Richard A. Paez and
Johnnie B. Rawlinson,[*] Circuit Judges.

Per Curiam Opinion;
Partial Concurrence and Partial Dissent by Judge Paez

## SUMMARY[**]

### Antitrust

The panel affirmed the district court's summary judgment in an action alleging that the defendant, the plaintiff's competitor in auto parts markets, violated antitrust laws in the receipt of favorable prices from a manufacturer.

The panel held that the plaintiff did not show that the defendant knowingly received discriminatory prices not justified by savings to the manufacturer, in violation of the Robinson-Patman Act. The panel concluded that the plaintiff failed to show that the defendant had actual knowledge, trade knowledge, or a duty to inquire whether the favorable prices it received might be prohibited by the Act.

The panel also held that the plaintiff did not show that the defendant entered into an agreement in restraint of trade with the manufacturer, in violation of the Sherman Act. Affirming

---

[*] Judge Rawlinson was drawn as a member of this panel following the death of Judge Beezer in March 2012.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

on different grounds from the district court, the panel held that, under a rule of reason analysis, even assuming the defendant and the manufacturer had an agreement, the Sherman Act claim failed because the plaintiff produced no evidence that the vertical restraint actually injured competition.

Concurring in part and dissenting in part, Judge Paez wrote that he would affirm the dismissal of the Robinson-Patman Act claims. Disagreeing with the majority's decision to reach the merits of the Sherman Act claim, he wrote that he would remand that claim to the district court for further proceedings, including further development of the record on the alleged anticompetitive effect of the defendant's agreement with the manufacturer.

## COUNSEL

David C. Lundsgaard (argued) and Diane M. Meyers, Graham & Dunn PC, Seattle, Washington, for Plaintiff-Appellant.

Timothy G. Leyh (argued), Randall T. Thomsen and Katherine Kennedy, Danielson Harrigan Leyh & Tollefson LLP, Seattle, Washington, for Defendant-Appellee.

## OPINION

PER CURIAM:

Plaintiff Gorlick Distribution Centers and defendant Allied Exhaust Systems compete fiercely in the auto parts markets in Washington, Oregon and California. Gorlick

believed that Allied was receiving favorable prices from a manufacturer, and thus turned from the marketplace to the courts. We must decide whether Allied (1) knowingly received discriminatory prices not justified by savings to the manufacturer, in violation of the Robinson-Patman Act, and (2) entered an agreement in restraint of trade with the manufacturer, in violation of the Sherman Act.

## I.   Background

Gorlick and Allied distribute aftermarket automotive parts. Both deal in products made by Car Sound Exhaust System, a muffler and catalytic converter manufacturer.

Gorlick challenges the preferential terms that Car Sound allegedly offered to Allied but not to Gorlick, including free shipping of its product to the Pacific Northwest; lower prices on merchandise; volume discount pricing even when the volume requirements weren't met; and higher year-end sales rebates. Gorlick alleges that Allied knew these favorable shipping, pricing and rebate terms were not justified by cost differences, in violation of section 2(f) of the Robinson-Patman Act, 15 U.S.C. § 13(f).[1] Allied doesn't dispute, for the most part, that it received advantageous terms. Instead, Allied argues that it didn't know what prices other distributors received, and therefore couldn't knowingly have received discriminatory prices. Allied also argues that the preferential terms had valid defenses under the Robinson-Patman Act.

---

[1] Gorlick's original complaint also named Car Sound as a defendant, but Gorlick eventually dismissed Car Sound from the case.

Gorlick further alleges that Car Sound's shipping policy was the product of an agreement or conspiracy between Allied and Car Sound in restraint of trade, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Because it incurred shipping, handling and storage costs not borne by Allied, Gorlick claims it had difficulty matching its competitor's prices for Car Sound products.

After discovery, the district court granted summary judgment for Allied on all but one of the claims. It held that there was a genuine issue as to whether Allied's receipt of free shipping from Car Sound and knowledge that Gorlick had to pay its own shipping costs violated the Robinson-Patman Act. Rather than proceed to trial, Gorlick voluntarily dismissed the remaining claim and timely appealed the district court's grant of partial summary judgment for Allied.[2]

## II. Discussion

We review de novo the district court's grant of a motion for summary judgment. *Goodman* v. *Staples The Office Superstore, LLC*, 644 F.3d 817, 822 (9th Cir. 2011). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Id.*

---

[2] We ordered the parties to brief whether Gorlick's dismissal without prejudice violated our final judgment rule. Because we detect no intent to manipulate our appellate jurisdiction, we're satisfied that Gorlick appeals from a final judgment. *See James* v. *Price Stern Sloan, Inc.*, 283 F.3d 1064, 1070 (9th Cir. 2002).

## A.  Robinson-Patman Act Claims

The Robinson-Patman Act targets "the perceived harm to competition occasioned by powerful buyers" that have "the clout to obtain lower prices for goods than smaller buyers could demand." *Volvo Trucks N. Am., Inc.* v. *Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175 (2006).  The act prohibits sellers from discriminating on price in the sale of like goods, and thereby reducing competition, unless the price differential can be justified by savings to the seller.  *See* 15 U.S.C. § 13(a).  The act contains a counterpart provision that makes it unlawful for buyers "knowingly to induce or receive a discrimination in price which is prohibited by this section."  *Id.* § 13(f).

Buyers are not liable if they are innocent beneficiaries of discriminatory prices.  *See Automatic Canteen Co. of Am.* v. *FTC*, 346 U.S. 61, 70–71 (1953).  Plaintiff thus bears the burden of showing that the buyer knew both that (1) he was receiving a lower price than a competitor and (2) the seller would have "little likelihood of a defense" for offering that price.  *Id.* at 74, 79–80.  Restricting liability to situations where the buyer knowingly accepted illegal prices prevents section 2(f) from "putting the buyer at his peril whenever he engages in price bargaining."  *Id.* at 73.

The district court assumed that the prices Allied paid were prohibited by the Robinson-Patman Act.  Nevertheless, it held that Gorlick had not raised a genuine issue of fact as to whether Allied had the requisite knowledge under section 2(f).    Gorlick appeals, arguing that the district court overlooked evidence that Allied had actual knowledge, trade knowledge and a duty to inquire whether it was receiving prohibited prices.

### 1.  Actual Knowledge

Allied was undoubtedly aware of its favored position among Car Sound buyers.  Its salesmen bragged that they were "buying better" than their competition, and internal memos trumpeted Allied's superior purchasing discounts. Gorlick also suggests that Allied would have known it was receiving better prices because it could "reverse engineer" wholesale prices from retail prices.

But Allied is not liable under section 2(f) unless Gorlick shows Allied knew the prices it received likely did not qualify for a Robinson-Patman Act defense, *see id.* at 71, a burden Gorlick fails to meet.  Gorlick and Allied were very different Car Sound customers.  Allied made Car Sound its flagship brand, purchased Car Sound products in much higher volumes and provided promotional services for Car Sound products that Gorlick did not.  A Car Sound executive testified that Allied promoted only Car Sound products, while Gorlick pushed products sold by Car Sound's competitors. Even if Allied knew it received superior prices and discounts, Gorlick presents no evidence that Allied knew these benefits resulted from anything other than the significant differences in how the two companies did business.

Gorlick argues that, at the summary judgment stage, we must infer that Allied knew it was receiving unfair prices because Car Sound offered it bulk discounts even when it failed to buy bulk quantities.  According to Gorlick, where a seller publishes its prices, any departure from the schedule places the buyer on notice that he is receiving discriminatory prices. But the Robinson-Patman Act doesn't prohibit buyers from haggling for a better deal.  *Id.* at 73.  To put a buyer at risk of liability any time he asks for a lower-than-listed price

would do enormous damage to the "sturdy bargaining between buyer and seller for which scope was presumably left" by our antitrust laws. *Id.* at 74. The receipt of better-than-published prices, without more, does not satisfy section 2(f)'s knowledge requirement.

In any event, Gorlick itself received advantageous pricing even when it failed to meet Car Sound's targets. In 2004 and 2006, Gorlick didn't buy enough product to qualify for a rebate, but Car Sound gave it credit anyway. A Car Sound executive testified that his company offered all distributors "trailer pricing" even when they purchased less than a trailer's worth of parts. A buyer's receipt of discounted prices doesn't run afoul of the act "if all purchasers were given an equal opportunity to purchase [at] the less expensive" price. *FLM Collision Parts, Inc.* v. *Ford Motor Co.*, 543 F.2d 1019, 1025 (2d Cir. 1976).

Gorlick offered other evidence of Allied's alleged actual knowledge, none of which raises a triable issue of fact. It points to an e-mail in which Car Sound informed Allied that, because of its settlement with Gorlick, it would "unfortunately" have to offer the two companies the same prices. But Gorlick hasn't explained why we should assume that Allied knew what prices its competitor was getting before the litigation began. Gorlick also introduced a meeting agenda showing that Allied was planning to ask Car Sound to raise Gorlick's prices. But these pre-meeting notes don't show that Allied ever followed through with the request, nor are they accompanied by evidence that Car Sound acceded or even took the request seriously.

## 2.  Trade Experience Knowledge

Gorlick argues that, even if Allied did not actually know it was receiving discriminatory prices, its "trade experience" would have placed Allied on notice that those prices were prohibited by the Robinson-Patman Act.  Gorlick has two routes to making a prima facie case of trade knowledge. First, it may show that Allied secured "a substantial price differential" while knowing that Car Sound sold its products to Gorlick in the same quantities, in the same manner and "with the same amount of exertion." *See Automatic Canteen*, 346 U.S. at 80.  Second, if there were differences in the quantities ordered or manner of sale, Gorlick must demonstrate that Allied knew those differences did not justify the price breaks it received.  *Id.*

Because Allied and Gorlick were very different customers, only the second test is relevant here.  Allied was Car Sound's "number one account" and purchased roughly fifteen times the dollar amount of product that Gorlick did. Allied also developed an electronic ordering system that reduced errors and streamlined its dealings with Car Sound. Gorlick hasn't presented evidence that Allied knew the deals it received were anything other than an incentive for its continued loyalty, much less that Allied had any insight into the pricing Car Sound offered competitors.  Car Sound's president testified that "we never show the price of one company to another."

Gorlick cites to *In re D & N Auto Parts Co.*, 55 F.T.C. 1279 (1959), but that case can be distinguished on its facts. There, the Federal Trade Commission concluded that auto parts jobbers who "were successful operators in a highly competitive market and knew the facts of life so far as the

automotive parts market was concerned" should have known that their discounts were unjustified by the volume and manner of their purchases. *Id.* at 1295. But the jobbers there had joined together in membership corporations to secure discounts and rebates based, not on the volume of their individual purchases, but on the combined quantities purchased by the group. *Id.* Gorlick hasn't explained why Allied, which was not part of such an organization, should have known that the favorable prices it received from Car Sound were unwarranted.

### 3.  Duty to Inquire

Finally, Gorlick argues that Allied's dealings with Car Sound put it on inquiry notice that it was receiving discriminatory prices not within a Robinson-Patman Act defense. Gorlick identifies only one case where we found that a buyer had a duty to inquire, *Fred Meyer, Inc.* v. *FTC*, 359 F.2d 351 (9th Cir. 1966), *rev'd on other grounds*, 390 U.S. 341, 358 (1968), but there the buyer induced the preferential prices and insisted that none of its competitors be offered the same deal. *Id.* at 365–66.

Gorlick produced no evidence showing that Allied did anything of the sort. The closest it comes is the meeting agenda showing that Allied planned to ask Car Sound to raise Gorlick's prices but, as discussed above, there is no evidence that Allied followed through or that Car Sound acquiesced. Holding that Allied had a duty to inquire into the prices offered to its competitors would drastically expand the scope of that duty, and we decline to do so here.

In sum, we affirm the grant of summary judgment because Gorlick fails to show that Allied had actual

knowledge, trade knowledge or a duty to inquire whether the favorable prices it received might be prohibited by the Robinson-Patman Act.

### B.  Sherman Act Claim

Section 1 of the Sherman Act proscribes contracts, combinations or conspiracies that unreasonably restrain trade. 15 U.S.C. § 1; *State Oil Co.* v. *Khan*, 522 U.S. 3, 10 (1997). We test the legality of a restraint under the rule of reason, asking whether it "is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition."  *FTC* v. *Indiana Fed'n of Dentists*, 476 U.S. 447, 458 (1986).  To sustain a section 1 claim under the rule of reason, a plaintiff must show (1) the parties to the agreement intend to harm or restrain competition, (2) the agreement actually injures competition and (3) "the restraint is unreasonable as determined by balancing the restraint and any justifications or pro-competitive effects of the restraint."  *Cal. Dental Ass'n* v. *FTC*, 224 F.3d 942, 947 (9th Cir. 2000).

Gorlick claims that Allied and Car Sound together devised a shipping policy that violated section 1.  Car Sound would ship its products to Allied's facilities in the Pacific Northwest without charge but refused to ship to Gorlick outside of California, even if Gorlick paid the shipping costs. Gorlick worked around the refusal by having Car Sound products delivered to its California warehouses and transporting the goods to the Northwest at its own expense.

The district court rejected Gorlick's section 1 claim, concluding that the evidence, viewed in the light most favorable to Gorlick, failed to establish that Allied and Car

Sound acted in concert to limit Gorlick's access to Car Sound products in the Pacific Northwest.  Even if the evidence established that Car Sound refused to ship to Gorlick outside of California, the district court wasn't persuaded that Car Sound made this decision "at Allied's behest."  In the alternative, it held the Sherman Act claim time-barred.

We affirm, but on different grounds.  *See Rano* v. *Sipa Press, Inc.*, 987 F.2d 580, 584 (9th Cir. 1993).  Even assuming that Allied and Car Sound had an agreement, the Sherman Act claim fails because Gorlick produced no evidence that the vertical restraint actually injured competition.  *See Cal. Dental Ass'n*, 224 F.3d at 947.

### 1.  Anticompetitive effects

Gorlick complains that the alleged Allied–Car Sound agreement handicapped its ability to sell Car Sound products at competitive prices.  But the antitrust laws "were enacted for the protection of *competition*, not *competitors*." *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (internal quotation marks omitted).  Gorlick must demonstrate injury to competition in the market as a whole, not merely injury to itself as a competitor.  *See Brantley* v. *NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012); *McDaniel* v. *Appraisal Inst.*, 117 F.3d 421, 423 (9th Cir. 1997); *Zoslaw* v. *MCA Distrib. Corp.*, 693 F.2d 870, 887 (9th Cir. 1982).

Gorlick tries to translate its individual harm into harm to competition by relying on the concentrated nature of the market.  As it notes, Gorlick and Allied together account for seventy percent of the market in parts of Oregon and Washington.  Because Gorlick is Allied's main rival, Gorlick

argues that anything that hobbles its own business gives Allied increased market power and hurts competition overall.

This theory of anticompetitive harm might be plausible if we were looking only at the market for Car Sound products. But, as Gorlick concedes, the relevant market is "the market for aftermarket automotive exhaust products provided through traditional warehouse distributors." A number of other manufacturers, including CATCO, Eastern, Walker, Flowmaster, Jones Exhaust, Schultz and the International Muffler Company, serve this market and provide substitutable products.

It doesn't matter whether Car Sound's products are fully interchangeable with those of its competitors because perfect fungibility isn't required. *United States* v. *E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 394 (1956). If it were, "only physically identical products would be a part of the market." *Id.* Instead, products must be reasonably interchangeable, such that there is cross-elasticity of demand. *Brown Shoe Co.* v. *United States*, 370 U.S. 294, 325 (1962).

Nothing in the record suggests that the price Allied charged for Car Sound products was insensitive to the prices charged for competing products. That companies make a significant investment in new product lines isn't surprising, and it's certainly not probative of whether products are sensitive to price competition. And even if Allied charges higher prices than Gorlick for Car Sound products, that says nothing about how competitive Car Sound's products were vis-a-vis other brands. In short, Gorlick fails to show how the alleged Allied–Car Sound pact dampens competition among these interchangeable brands, several of which it sells. Absent an allegation that Car Sound was the only, or even the

dominant, brand of automotive exhaust parts, the supposed arrangement between Car Sound and Allied doesn't affect competition in the relevant market.

So long as other manufacturers compete with Car Sound, which they do, and Gorlick sells those other brands, which it does, vibrant interbrand competition will act as a check on any intrabrand advantage that Allied may receive on Car Sound products. If Allied tries to charge monopoly prices on Car Sound parts, consumers will simply switch to the other brands. Nothing in the alleged Allied–Car Sound agreement affects Gorlick's ability to sell competing products. In fact, Gorlick was the principal distributor for CATCO, Car Sound's main competitor, and had exclusive arrangements with at least two other suppliers.

Perhaps recognizing that the record supports the existence of strong interbrand competition, Gorlick focuses instead on intrabrand competition among Car Sound distributors. But it is interbrand competition that is "the primary concern of antitrust law." *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U.S. 36, 52 n.19 (1977). Gorlick claims that a reduction in interbrand competition isn't required where there's a concentrated market, but the only case it cites for this proposition is an out-of-circuit district court decision from 1988.

The Supreme Court has recognized that vertical restraints on intrabrand competition can actually promote interbrand competition and are therefore consistent with a competitive market. *See Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*, 551 U.S. 877, 889–92 (2007). In that case, a leather belts manufacturer refused to sell its products to retailers that discounted below a certain price. *Id.* at 883. The Court held

that such vertical price restraints are not a per se violation of section 1, because, among other procompetitive effects, they help protect investments in customer service. *Id.* at 890–91, 907. A manufacturer might wish retailers to advertise its products, conduct demonstrations or hire knowledgeable employees. *Id.* at 890–91. In the absence of a price restraint, a discounting retailer that provides no such services might undercut a competitor that has spent resources generating demand for the manufacturer's product. *Id.* This free-riding could ultimately hurt consumers:

> If the consumer can . . . buy the product from a retailer that discounts because it has not spent capital providing services or developing a quality reputation, the high-service retailer will lose sales to the discounter, forcing it to cut back its services to a level lower than consumers would otherwise prefer.

*Id.* at 891.

Allied provided just these sorts of benefits to Car Sound. Before Allied began selling Car Sound's products in the Pacific Northwest, Car Sound had no presence in the region. Allied built brand recognition for the company by hosting seminars for muffler shops and making sales calls— "missionary work," as Allied called it—alongside Car Sound employees. Gorlick, on the other hand, aggressively drove down the price for Car Sound products. Had Car Sound extended it free shipping, Gorlick might have undercut Allied's investment in the product line. Far from hampering competition, the alleged vertical restraint helped ensure that Allied would continue promoting Car Sound parts, so they could compete effectively against products offered by other

manufacturers.  *See Continental T. V.*, 433 U.S. at 54–55; 8 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ch. 16A–3, at 136–42 (3d ed. 2010).

In sum, Gorlick hasn't provided a plausible explanation for how the alleged agreement between a manufacturer and a distributor, concerning a product line without market dominance, causes harm to competition in the entire automotive exhaust product market.  While Gorlick may be unhappy that Allied got a better deal, it can't turn its individual grievance into a general claim of harm to competition.    Furthermore, its allegation of market concentration isn't proof of anticompetitive harm because Car Sound's competitors, whose products Gorlick continues to sell, act as a check on Allied's ability to increase prices across the board.

### 2.  Issue Fairly Raised Below

Gorlick protests that the record on anticompetitive effects is undeveloped and that it would be prejudiced if we affirmed the district court on that ground.  But the parties discussed the anticompetitive effect of the alleged Allied–Car Sound agreement in supplemental briefs before the district court. Gorlick had a chance to present its side of the argument, and even included expert economic testimony.  Furthermore, the parties conducted supplemental briefing following oral argument before us.  There's no indication of what more Gorlick would prove if it had another opportunity.

Sending this issue back to the district court would be a waste of time and judicial resources.  There are no disputed material facts.  Even assuming that a vertical agreement existed and that it affected the price of Car Sound products,

there's no plausible showing of harm to competition in the market for automotive exhaust products as a whole.  Gorlick loses as a matter of law.

*          *          *

Favorable prices that improve one distributor's competitive position do not necessarily violate the antitrust laws.  Here, Gorlick hasn't shown that Allied knew the price advantages it received resulted from any factor other than its large volume of purchases and enthusiastic salesmanship of Car Sound products.  Nor has Gorlick demonstrated that any alleged agreement between Allied and Car Sound stifled competition in the market for aftermarket auto parts as a whole.  We must return this capitalist rumble to the forum where it belongs: the market.

**AFFIRMED.**

PAEZ, Circuit Judge, concurring in part and dissenting in part:

I join Parts I and II.A of the majority opinion and would affirm the dismissal of Gorlick's Robinson-Patman Act claims. But I cannot agree with the majority's decision to reach the merits of Gorlick's Sherman Act claim. I would remand that claim to the district court for further proceedings, including further development of the record on the alleged anticompetitive effect of Allied's agreement with Car Sound. The district court would then be in the best position, assuming there are no genuine factual disputes, to apply the rule of reason analysis.

"In the absence of genuine issues of material fact, we may affirm the district court's summary judgment on any ground supported by the record, regardless of whether the district court relied upon, rejected, or even considered that ground, if the movant is entitled to judgment as a matter of law." *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir. 2012) (internal citations and quotations omitted). Here, while the majority's analysis may ultimately be correct, I do not think the thin record in this case supports such a determination.

The majority recognizes that Gorlick's theory of anticompetitive harm—which was not the basis for Allied's motion for summary judgment—"might be plausible," except that the majority seems to assume that aftermarket automobile exhaust parts are fungible and thus that "vibrant interbrand competition will act as a check on any intrabrand advantage that Allied may receive on Car Sound."   The record, however, does not support the conclusion that such products are "substitutable" or "interchangeable." The record only provides oblique and out-of-context hints that aftermarket auto exhaust parts are so fungible. The only evidence supporting such an inference comes from a deposition of Allied manager Lawrence Contreras. While testifying that he could infer his competitors' prices from Allied's profit margins, the following exchange took place:

> Q: When you say "they," who is buying at the same rate as you?
>
> A: Anyone that would have the same like product, not necessarily same brand.
>
> Q: Same like product?

A: Like product, not brand name.

Q: So like — let's take Walker versus MagnaFlow [Car Sound]. Is there a Walker product that is like a MagnaFlow product —

A: Yes.

Q: — in the context that you just used?

A: Yes.

Q: What would that be? Give me an example.

A: Mufflers, catalytic converters, tubing, parts and accessories. They're all pretty close.

The other hints in the record are passing references in depositions discussing the origins of the aftermarket market ("Catalytic converters were just being developed as a replacement part on a car. Prior to that they were — had to be purchased from the car dealer."), and the existence of several competitors manufacturing catalytic converters. In my view, this evidence does not conclusively establish that aftermarket catalytic converters are fully interchangeable products such that vibrant intrabrand competition can be assumed, particularly in light of other suggestions in the record that individual brands may be distinguishable. For example, a former Gorlick General Manager testified about the "investment" companies make in "shepherding [a new] line" of a particular product, suggesting that customers may systematically prefer one brand over another. Moreover, Gorlick did present some evidence that the market was sensitive to competition for distribution of Car Sound

products. Gorlick's expert opined that there was a likelihood of anticompetitive effects from the allegedly wrongful agreement between Allied and Car Sound. One of several factors the expert relied on was a muffler retailer's statement bemoaning Car Sound's decision to prevent Gorlick from selling Car Sound products in his area because the retailer "relie[d] on Gorlick's to get a fair price" on Carsound products. The expert also opined that Allied was able to maintain monopoly prices while the alleged illegal agreement was in effect. If interbrand competition was as robust as the majority presumes, Allied would have been unlikely to sustain higher prices on Car Sound products—and muffler shops would be indifferent to Gorlick's ability to sell Car Sound products.

Even assuming, *arguendo*, that the anticompetitive issue was fairly presented below, I do not see how Allied can prevail on summary judgment on this record, particularly when we must consider what little evidence there is in the light most favorable to Gorlick. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 822 (9th Cir. 2011). Although we invited supplemental briefing on the anticompetitive effects issue, I am not persuaded that we should exercise our discretion to reach the merits of Gorlick's Sherman Act claim. Because of the way Allied's summary judgment motion evolved in the district court, the issue was not thoroughly developed there, and I am reluctant to resolve this claim on the merits when it was never the basis for Allied's summary judgment motion. Accordingly, I would remand the Sherman Act claim to the district court for further proceedings.