Joseph F. **WHELAN**, Jr., Plaintiff,

v.

**ROYAL CARIBBEAN CRUISES LTD.,** Defendant.

Case No. 1:12–cv–22481–UU.

United States District Court, S.D. Florida.

Aug. 13, 2013.

Darla Marie Lobanova, Joseph J. Rinaldi, Jr., Brill Rinaldi Garcia, Coral Gables, FL, Juan Manuel Garcia, Jr., Brill Rinaldi Garcia, Miami, FL, Juan Manuel Garcia, Jr., Brill Rinaldi Garcia, Miami, FL, for Plaintiff.

David James Horr, Nicholas Allen Applin, Horr Novak & Skipp, P.A., Miami, FL, for Defendant.

### SECOND ORDER ON MOTIONS IN LIMINE

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Exclude Opinion Testimony of Dr. Venk Mani and Dr. Allen Anderson. D.E. 62. Plaintiff has filed a Response, D.E. 93, and Defendant has filed a Reply, D.E. 113. This Motion is now ripe for disposition.

THE COURT has reviewed the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises.

### BACKGROUND [1]

This is a maritime wrongful death action in which Plaintiff seeks to recover dam-

1. The following set of facts are those especially relevant to the three Motions disposed of in

ages for the death of Decedent, Sheila Jackson Priebel, which Plaintiff alleges was caused by injuries sustained aboard Defendant's ship, *Explorer of the Seas.* Plaintiff, Joseph Whelan, Jr., is Decedent's son. D.E. 1 ¶ 3(b). On or about September 25, 2010, Decedent boarded the *Explorer of the Seas* as a paying passenger for a cruise vacation. *Id.* ¶ 11. On or about September 30, 2010, Defendant directed Decedent and other passengers to wait in an area of the ship called The Chamber to disembark the ship at the Port of Bayonne, in New Jersey. *Id.* ¶ 12. The Chamber is a club occupying space on two decks of the ship, with the two floors connected by a flight of stairs. *Id.* ¶ 13. Decedent fell from a single step at or near an exit area of The Chamber after descending the flight of stairs immediately next to this single step. *Id.* ¶ 14. Plaintiff alleges that the change of elevation of the single step made her unable to maintain walking stability in a timely manner, thus precipitating her fall. *Id.* ¶ 15.

Decedent suffered a right humerus fracture as the result of her fall. *Id.* ¶ 35. At the time, the *Explorer* was docked in Bayonne, New Jersey, and Decedent received "some treatment" for her injury aboard the vessel. *Id.* ¶¶ 37–38. Subsequently she received treatment at Bayonne Medical Center in New Jersey, and, upon returning to her home state of Tennessee, she received "more substantial treatment" at Saint Thomas Hospital. *Id.* ¶¶ 39–40. Later, Decedent called Dr. Allen F. Anderson, stating that she had a broken arm and needed to be seen urgently. D.E. 93–3, at 17:18. According to Dr. Anderson's office note of Decedent's October 1, 2010 visit, he prescribed her an arm brace and five milligrams of Percocet for her pain. D.E. 62–5. At deposition, Dr. Anderson testified that Decedent sought

his treatment in this case because he had treated her for an earlier fractured arm and fractured tibia in 1991. D.E. 93–3, at 10:14–16. In addition to his prescriptions, Dr. Anderson referred Decedent to another physician—Dr. Coogan—for a follow-up, "because this was a specialized problem that had associated nerve injury." *Id.* at 10:19–20. Dr. Anderson described the visit as "a screening-type visit." *Id.* at 10:20–21.

On October 8, 2010 Decedent collapsed at her home in Tennessee and became pulseless and apneic. D.E. 62–2 at 1. Emergency Medical Services took her to Horizon Medical Center where she was pronounced dead upon arrival. *Id.* Venk Mani, M.D. prepared and signed a Report Of Investigation By County Medical Examiner. In the Report, he stated that the cause of death was: "Pulmonary embolism. Contributory Cause of Death: Recent fracture of right lower humerus dated 10–2–2010." Dr. Mani also prepared and signed the Certificate of Death, D.E. 62–2 at 2, in which he stated that the immediate cause of death was a pulmonary embolism and that the "underlying cause" was "fracture of right lower humerus." Plaintiff alleges that she died of a pulmonary embolism resulting from the fracture she suffered aboard the *Explorer of the Seas.*

### *LEGAL STANDARD*

■ Federal Rule of Evidence 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Supreme Court has set forth the criteria for the admissibility of expert

this Order, and does not include all of the

facts relevant to this action as a whole.

testimony under Rule 702 by instructing trial judges to "determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue," which includes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and or whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This standard is applicable to all expert testimony: *"Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

The U.S. Court of Appeals for the Eleventh Circuit has established a three-part conjunctive test to determine whether expert testimony should be admitted under *Daubert:*

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291–92 (11th Cir.2005). The party seeking to introduce expert testimony bears the burden of satisfying these criteria by a preponderance of the evidence. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir.1999).

With respect to the qualification of an expert, courts must recognize that "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004). To determine whether a witness is qualified to testify as an expert regarding the matters he intends to address, a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact. *See, e.g., Maiz v. Virani,* 253 F.3d 641, 665 (11th Cir.2001) (finding—in a civil RICO claim involving fraudulent real estate transactions—that a witness with "a Ph.D. in economics, extensive experience as a professional economist, and a substantial background in estimating damages" was qualified as an expert witness in assessing the loss suffered by the plaintiff even though he had no real estate development experience).

Even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his expert opinion must be sufficiently reliable under *Daubert* and its progeny. *See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.,* 326 F.3d 1333, 1342 (11th Cir.2003) (stating that "one may be considered an expert but still offer unreliable testimony"). If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Frazier,* 387 F.3d at 1261 (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.)). Thus, it remains a basic foundation for

admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Id.* (quoting *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786).

 The final requirement for admissibility of expert testimony is that it "assist the trier of fact." *Frazier,* 387 F.3d at 1244. In other words, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citing *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985)). Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys.,* 50 F.3d 908, 917 (11th Cir.1995) (citations omitted).

## DISCUSSION

### A. Dr. Mani

 Defendant moves to exclude Dr. Mani's opinion testimony as to Decedent's cause of death on the grounds that it is not sufficiently reliable under the *Daubert* standard for Rule 702. Defendant argues that Dr. Mani's opinion is unreliable, *inter alia,* because he failed to take into consideration a differential etiology analysis and because he did not perform an autopsy. Defendant's *Daubert* argument, however, is misplaced. Dr. Mani, as author of Decedent's death certificate, D.E. 93–2, may testify as a fact witness. *See Binakonsky v. Ford Motor Co.,* 133 F.3d 281, 290 (4th Cir.1998). That Plaintiff initially included Dr. Mani as a potential expert witness in his Rule 26(a) disclosures does not change the Court's analysis of his admissibility as a fact witness. *See United States v. Henderson,* 409 F.3d 1293, 1300 (11th Cir. 2005). As noted by Plaintiff, Defendant

did not move to exclude the death certificate, which is admissible as a public record of vital statistics. Fed. R. of Evid. 803(9). Dr. Mani is the only witness competent to testify with respect to the determinations made in and the contents of the death certificate.

 Even if the Court were to subject Dr. Mani's fact testimony to the *Daubert* strictures applicable to expert testimony, Defendant's arguments concerning reliability would fail. Dr. Mani *does* purport to have conducted a differential etiology analysis in arriving at his cause-of-death determination in this case. At deposition, Dr. Mani testified that, as part of his postmortem investigation, he considered Decedent's symptoms at the time of her collapse. D.E. 93–1, at 27:3–10. He testified that Decedent "did not have any convulsions, seizure or neurological activity described by symptoms, so I did not consider it as a cerebrovascular accident," such as a stroke, for example. *Id.* at 27:11–14. A reliable differential analysis "need not rule out all possible alternative causes," but "at least consider other factors that could have been the sole cause of the plaintiff's injury." *Guinn v. AstraZeneca Pharms. LP,* 602 F.3d 1245, 1252–53 (11th Cir.2010). That is what Dr. Mani purports to have done in this case.

Nor does a lack of autopsy render Dr. Mani's determination unreliable. No autopsy was performed because, in Dr. Mani's professional judgment, none was needed "to make this clinical judgment." D.E. 93–1, at 20:19–22. Instead, Dr. Mani relied on the history provided by Decedent's widower, Decedent's clinical presentation at the time that emergency medical personnel arrived at her home, and a hospital record of subsequent events that occurred in the emergency room, to arrive at "a clinical judgment of cause of death as pulmonary embolism." *Id.* at 13:16–18.

His testimony does not describe "mere" chronological reasoning, as argued in Defendant's Motion. Any weakness in by Dr. Mani's determination is properly addressed through cross-examination at trial. *See Binakonsky,* 133 F.3d at 290.

### B. Dr. Anderson

 Defendant moves to exclude Dr. Anderson's opinion as to Decedent's cause of death. Dr. Anderson was Decedent's treating physician. Plaintiff did not make any Rule 26 disclosure as to opinion testimony to be offered by Dr. Anderson. A physician may offer his lay opinion testimony when the opinion is "based on his experience as a physician and [is] clearly helpful to an understanding of his decision making process in the situation." *Williams v. Mast Biosurgery USA, Inc.,* 644 F.3d 1312, 1317 (11th Cir.2011). Consequently, treating physicians are not "expert" witnesses when testifying "about observations based on personal knowledge, including the treatment of a party." *Principi v. Survivair, Inc.,* 231 F.R.D. 685, 692 (M.D.Fla.2005). However, "treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required." *In re Denture Cream Prods. Liab. Litig.,* 09–2051, 2012 WL 5199597, at *4 (S.D.Fla. Oct. 22, 2012) (citing *Goodman v. Staples the Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir.2011)).

 Dr. Anderson's opinion testimony as to Decedent's cause of death should be excluded. While Dr. Anderson may serve as a fact witness with respect to Decedent's visit to his office upon returning to Tennessee, his opinion as to her cause of death is beyond the scope of his treatment. Neither his office note nor his deposition testimony indicate that he had concerns about a risk of death. In fact, Dr. Anderson described his treatment in this case as "a screening-type visit." Dr. Anderson's cause-of-death opinion is therefore not "clearly helpful to an understanding of his decision making process" in prescribing a fracture brace and pain medication as noted in his office note. *See* D.E. 62–5. Accordingly it is

ORDERED AND ADJUDGED that the Motion, D.E. 62, is GRANTED IN PART and DENIED IN PART. It is GRANTED in that the Court will exclude Dr. Anderson's opinion testimony regarding Decedent's cause of death. It is DENIED with respect to Dr. Mani's testimony.